1  Ronald A. Marron (SBN 175650)
   Alexis M. Wood (SBN 270200)
2  Kas L. Gallucci (SBN 288709)
   **Law Offices of Ronald A. Marron**
3  651 Arroyo Drive
   San Diego, CA 92108
4  Tel.: (619) 696-9006
   Fax: (619) 564-6665
5  Ron@consumersadvocates.com
   Alexis@consumersadvocates.com
6  Kas@consumersadvocates.com
7
8  William Darryl Harris, II (*pro hac vice* forthcoming)
   Ryan Wagenleitner (SBN 262408)
9  **Harris Legal Advisors LLC**
   3136 Kingsdale Center, Suite 246
10 Columbus, OH 43221
   Tel: (614) 504-3350
11 Fax: (614) 340-1940
   will@harrislegaladvisors.com
12 ryan@harrislegaladvisors.com
13

14 [Additional Counsel listed on signature page]
   *Counsel for Plaintiffs and the Proposed Class*
15

16              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
17                     **OAKLAND DIVISION**
18

19 | **A.L.**, minor, by and through guardian **Jessica Savich,** and all others similarly situated, | Case No. 4:25-cv-8183 |
   |---|---|
20 | | **Complaint** |
   | Plaintiffs, | **Class Action** |
21 | | |
   | v. | **DEMAND FOR JURY TRIAL** |
22 | | |
23 | **Disney Worldwide Services, Inc.**, a Florida corporation, **Disney Entertainment Operations, LLC**, a Florida limited liability company, and **The Walt Disney Company**, a Delaware corporation, | |
24 | | |
25 | | |
26 | | |
   | Defendants. | |
27

28

A.L., a minor ("Plaintiff" or "Minor Plaintiff"), by and through guardian Jessica Savich ("Guardian Savich"), and all similarly situated persons, alleges the following against Defendants Disney Worldwide Services, Inc. ("Disney Worldwide") and Disney Entertainment Operations, LLC ("Disney Entertainment"), and The Walt Disney Company ("TWDC") (collectively, "Disney" or "Defendants"). Guardian Savich bases the following allegations upon her own personal knowledge, the investigation of counsel, and on information and belief.

## I.      Nature of the Action

1.      Disney engaged in intrusive and unlawful business practices by enabling the collection of personal information from millions of children under the age of 13 in the United States, without first notifying parents or obtaining verifiable parental consent.

2.      Disney is a worldwide media conglomerate that, among other things, produces and distributes video content through its official YouTube[1] channels, some of which is directed towards children.

3.      Since 2019, Disney has failed to designate as "made for kids" ("MFK") certain videos, cartoons, movie clips, etc. ("Content") that it distributed on YouTube that was clearly aimed at children under 13.

4.      Disney's failure to designate its YouTube Content as MFK has facilitated the collection of personal data from children, including persistent identifiers (like cookies and device IDs) and other sensitive information (such as identity and location) by YouTube, all without first notifying parents or securing verifiable parental consent.

5.      Disney thereby generated substantial advertising revenue by exposing its audience, which includes of millions of children under the age of 13, to YouTube's targeted advertising algorithm(s).

6.      Disney's conduct violated numerous federal and state laws including those explicitly designed to protect children.

---

[1] YouTube is a video sharing platform owned by Google LLC ("Google").

Class Action Complaint and Demand for Jury Trial

## II.     Parties

### A.     Minor Plaintiff A.L. and Guardian Jessica Savich

7.     Minor Plaintiff and Guardian Savich are citizens of the State California and reside in Contra Costa County, California. Guardian Savich brings this action on behalf of her child, Minor Plaintiff, and on behalf of all others similarly situated.

### B.     Defendants

8.     Defendant Disney Worldwide is a Florida corporation with its principal place of business at 1375 Buena Vista Drive, Lake Buena Vista, Florida, 32830. Disney Worldwide is a wholly owned subsidiary of the Walt Disney Company and serves as a central business and administrative services provider for Disney's various media and entertainment subsidiaries.

9.     Defendant Disney Entertainment is a Florida limited liability company, with its principal place of business at 500 Buena Vista Street, Burbank, California, 91521. Disney Entertainment is primarily responsible for the creation, distribution, and monetization of Disney's entertainment content, including video programming made available on platforms such as YouTube.

10.     Defendant TWDC is a Delaware corporation with its principal place of business at 500 South Buena Vista Street, Burbank, California.

11.     Disney Worldwide and Disney Entertainment are agents and instrumentalities of the Walt Disney Company and operate under its direction and control.

## III.     Jurisdiction

12.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d). The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs. There are more than 100 putative class members. Minimal diversity exists because Plaintiff and many putative class members are citizens of a different state than Defendants. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

13.     This Court has specific personal jurisdiction over Disney Worldwide because it is authorized to conduct business in California, regularly conducts business in California, and Plaintiff's claims arise out of its California activities.

14.     This Court has general personal jurisdiction over Disney Entertainment because it operates and maintains its principal place of business in California.

15.     This Court has general personal jurisdiction over TWDC because it operates and maintains its principal place of business in California.

**IV.    Divisional Assignment**

16.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)-(d) because a substantial part of the events and omissions giving rise to Minor Plaintiff's claims occurred in this District.

**V.    Factual Background**

17.     The Walt Disney Company operates as one of the world's largest media entertainment conglomerates through numerous subsidiaries, including Disney Worldwide and Disney Entertainment.

18.     Disney has built a media empire based on content that is specifically made for children, including the use of globally recognized characters, franchises, and branded content to include Disney Princesses, Pixar, Marvel, and Star Wars.

19.     Disney's business model depends on capturing and monetizing children's attention across multiple platforms, including television, streaming, merchandise, theme parks, and digital media.

20.     Central to this strategy is engaging, child-directed content designed to attract and retain young viewers, often without meaningful parental oversight, which allows Disney to generate billions in revenue annually through advertising, licensing, and data-driven marketing.

**A.     Disney's Presence on the YouTube Platform**

21.     Disney operates an online service that offers streaming content in the form of videos that it uploads on the YouTube platform. The YouTube platform is a video-sharing platform on which, among other things, users can view videos or upload video content to share. During the

Class Action Complaint and Demand for Jury Trial

relevant time period of 2020 through the present, Disney has operated and uploaded videos to more than 1,250 YouTube channels through numerous subsidiaries.

22.    YouTube requires that videos intended to be available to the public must be uploaded through a channel. Disney has uploaded tens of thousands of videos for consumers to view on the YouTube platform and continues to upload additional videos.

23.    Many of Disney's videos are extremely popular. For example, videos that Disney uploaded to three dozen of its channels resulted in hundreds of millions of views in the United States in just three months of 2019. The amount of time viewers spent watching videos on these channels soared to over 100 million hours worldwide, with approximately 1.2 billion views in the United States alone, during three months of the early COVID-19 pandemic period of 2020.

24.    Disney generates advertising revenues from YouTube videos in two ways. First, it receives a portion of the revenue that YouTube receives from advertising that YouTube places with Disney videos. Second, it places advertisements directly in some of the videos it uploads to YouTube.

**B.    Disney's Ability to Control the Collection of Children's Personal Information**

25.    Users may view videos on YouTube by navigating to a particular channel's homepage; or users may view videos uploaded to a channel without interacting with that channel. For example, when searching the Internet through a search engine or when searching for videos on YouTube itself, consumers may be presented with links that will take consumers directly to individual videos on YouTube.

26.    A channel's homepage has information about the channel, such as the channel's name, a description of the channel, the number of videos uploaded to the channel, the number of subscribers to the channel, and thumbnails of videos that a user can click on to watch. When looking at a channel's homepage, users can scroll down to view videos available on the channel, or users can click through to sort videos uploaded to the channel by oldest, newest, and most popular. A user may also click to view selected playlists of videos and can navigate to different tabs to view the channel's live videos or YouTube Shorts videos (videos that are no more than 60 seconds), if available.

Class Action Complaint and Demand for Jury Trial

27.     In November 2019, YouTube notified content creators, including Disney, that (1) they would be required to inform YouTube whether their content was MFK in order to comply with the Children's Online Privacy Protection Act ("COPPA") and (2) that Disney could make a MFK designation at the video level or channel level based on the amount of child-directed content that Disney made available to its audience.

28.     YouTube relies on the MFK designation to determine what functionality and advertising YouTube should make available on Disney's videos in order for YouTube to comply with COPPA.

29.     YouTube's settings give content creators the choice whether to mark a channel as (1) MFK, (2) not MFK ("NMFK"), or (3) to review the setting for every video uploaded to the channel:

| Basic info | **Advanced settings** | Feature eligibility |
| --- | --- | --- |

**Audience**

Simplify your workflow by selecting a channel setting. If you skip this question, you'll be required to identify each video on your channel that's made for kids. This setting will affect existing and future videos. Settings for individual videos will override the channel setting.

Do you want to set your channel as made for kids?

Regardless of your location, you're legally required to comply with the Children's Online Privacy Protection Act (COPPA) and/or other laws. You're required to tell us whether your videos are made for kids. What's content made for kids?

○ Yes, set this channel as made for kids. I mostly upload content that's made for kids.

○ No, set this channel as not made for kids. I almost never upload content that's made for kids.

◉ I want to review this setting for every video.

30.     YouTube explicitly informed Disney that its failure to accurately designate content could expose Disney to enforcement actions by the FTC or other authorities.

Class Action Complaint and Demand for Jury Trial

31.    If a content creator sets an audience level at the channel level, when an individual video is uploaded to that channel, by default, the video inherits the channel's designation. For example, if a channel is designated NMFK, then a video uploaded to that channel will likewise be designated as NMFK unless the content creator changed the designation to MFK for that video. After a video has been uploaded, the content creator can change the audience designation.

32.    When a video is designated MFK, YouTube disables certain functionality for that video including, but not limited to:

a.    Comments;

b.    "Autoplay on home;"

c.    Targeted advertising;

d.    Playback in the Miniplayer (allows a video to continue to play on a small screen as a user browses YouTube); and

e.    The ability for a user to save a video to a playlist or to watch later.

33.    These features are disabled, in part, to prevent the collection of personal information from children that would require operators to provide notice and obtain verifiable parental consent under the COPPA Rule. In addition to these features being disabled, the designation of a video also affects autoplay—when a video is marked as MFK it will exclusively autoplay to other videos marked as MFK and not play videos designated as NMFK.

34.    When a child-directed video is not designated MFK, (1) advertising is then targeted to children using persistent identifiers, (2) those features that would otherwise be disabled (see paragraph 32) to prevent the collection of personal information from children are now available to children, and (3) content designated NMFK may automatically play for children even though it is entirely inappropriate for children.

### C.    Disney Failed to Designate Child-Directed Videos as MFK

35.    Disney operates and uploads videos to channels that it has designated as MFK as well as to channels it has designated as NMFK. Per corporate policy, Disney sets the audience designation for a channel as MFK or NMFK, and adheres to the designation when uploading individual videos to that channel. Accordingly, under this policy, when a video is uploaded to a

channel Disney has designated as NMFK, Disney would allow the video to remain by default designated as NMFK, even if the video were child-directed. This is particularly troubling because, as noted in Paragraph 25 above, users may view videos uploaded to a channel without interacting with that channel.

36.     As a result, Disney has failed to designate a significant number of child-directed videos as MFK when they are uploaded to channels that are designated as NMFK.

37.     Child-directed videos that are designated as NMFK include, for example, videos available on the Pixar channel, the Disney Plus channel, the Walt Disney Studios channel, the Disney Animation Studios channel, the Disney Movies channel, the Disney on Ice channel, the Disney channel, the Oh My Disney channel, the Disney on Broadway channel, and the Disney D23 channel.

38.     Videos uploaded to those channels are clearly child-directed based, for example, on the videos':

     a.  subject matter, which may include stories that are read aloud by characters and celebrities who appeal to children;

     b.  visual content;

     c.  inclusion of music that is popular with children; or

     d.  language.

39.     By way of example, many videos feature clips of Mickey Mouse cartoons and clips from movies that are popular with children such as *Frozen*, *Encanto*, *Moana*, *Cars*, *Tangled*, *Ratatouille*, and *Toy Story*. These videos contain animated characters pertain to subjects popular with children, music, language, and other characteristics that abundantly demonstrate that this content is child-directed.

40.     Disney also created playlists that consist of videos with child-directed subject matter, visual content, animated characters, and music or other audio content directed to children, among other factors, from movies such as *Frozen*, *Inside Out*, *Finding Dory*, and *Encanto*. The playlists' subject matter include, for example, sing-alongs and story times with actors reading children's stories. Again, this content is clearly child-directed.

41.    Disney's failure to designate videos as MFK is also demonstrated by inconsistent designations for very similar videos that happen to appear on different channels but that have common child-directed subject matter, visual content, use of animated characters or child-oriented activities, music or other audio content, and language or other characteristics that are directed to children. For example, the Pixar channel, which hosts videos from the *Cars* movie franchise, is marked as NMFK, while the Pixar *Cars* channel, which exclusively has *Cars* franchise videos, is designated as MFK. As a result of Disney's policy not to change the audience designation for an individual video from the default setting for the channel, Disney designated certain child-directed *Cars* movie videos on the Pixar channel as NMFK (e.g., videos of movie clips featuring simple story lines easily understood by children about personified vehicles that learn valuable lessons about integrity, honesty, and true friendship), while very similar *Cars* movie videos on the Pixar *Cars* channel were marked as MFK. This difference in the setting illustrates Disney's failure to mark child-directed content as MFK when such content is uploaded to NMFK channels.

42.    Disney was informed as early as June 2020 that it had failed to appropriately designate child-directed videos as MFK. Then, YouTube notified Disney that it had changed the designations from NMFK to MFK for more than three hundred videos on channels that included Pixar, Disney, Disney Movies, Walt Disney Animation Studios, and Oh My Disney. The redesignated videos included videos from *The Incredibles*, *Coco*, *Toy Story*, *Tangled*, *Frozen*, and Mickey Mouse that include subject matter, visual content, and music or other audio content directed to children.

43.    After it was notified that YouTube had changed the designation for its videos, Disney chose not to revise its policy of designating videos based on the channel-level default rather than designating individual videos as MFK when appropriate.

44.    In some instances, Disney designated a channel as MFK, but then designated certain videos on those channels as NMFK. Examples of the channels that Disney marked MFK, but uploaded videos that it designated as NMFK include Disney XD, Disney Descendants, Disney Channel, Disney Junior, Radio Disney, Disney Princess, Star Wars Kids, Pixar Cars, Mickey Mouse, Nat Geo Kids, Fox Family Entertainment, Disney Games, and DisneyBooks.

45.     In at least one other instance, Disney designated a channel as "review this setting for every video" despite Disney's practice to designate each channel as MFK or NMFK. Yet, Disney failed to designate all of the child-directed content that it uploaded to that channel as MFK.

46.     As a result of Disney's failure to accurately designate child-directed videos as MFK, (1) YouTube collected personal information and placed targeted advertisements on child-directed ads on Disney's behalf, and (2) features that YouTube would have otherwise disabled for those videos remained available to viewers (e.g., the ability to comment on videos and save videos), which require user data in order to function properly.

**D.    Disney Placed its Own Ads on Child-Directed Videos**

47.     Disney places advertising in its own YouTube videos.

48.     Disney enabled targeted advertising campaigns to run on videos that were designated as NMFK, but in fact were directed to children, on both MFK and NMFK channels.

49.     The targeted advertising campaigns were enabled on videos that were designated as NMFK that were uploaded to channels that Disney had designated as MFK including the Disney channel, the Disney Descendants channel, the Disney Family channel, the Disney Games channel, the Disney Junior channel, the Disney Music channel, the Disney XD channel, the Mickey Mouse channel, the Pixar *Cars* channel, the Radio Disney channel, and the Nat Geo Kids channel.

50.     During the relevant time period, at least twelve different ad campaigns with over 350,000 ad impressions ran on these MFK channels.

**E.    Disney is Subject to the Children's Online Privacy Protection Act ("COPPA")**

51.     Congress enacted COPPA in 1998 to protect the safety and privacy of children online by prohibiting the unauthorized or unnecessary collection of children's personal information online by operators of Internet websites and online services. COPPA directed the Commission to promulgate a rule implementing COPPA. The Commission promulgated the COPPA Rule on November 3, 1999, under Section 1303(b) of COPPA, 15 U.S.C. § 6502(b), and Section 553 of the Administrative Procedure Act, 5 U.S.C. § 553. The Rule went into effect on April 21, 2000. The Commission promulgated revisions to the Rule that went into effect on July

1, 2013. Pursuant to Section 1303(c) of COPPA, 15 U.S.C. § 6502(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the Rule constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

52.    The COPPA Rule applies to any operator of a commercial website or online service directed to children that collects, uses, and/or discloses personal information from children, and to any operator of a commercial website or online service that has actual knowledge that it collects, uses, and/or discloses personal information from children. The Rule requires an operator to meet specific requirements prior to collecting online, using, or disclosing personal information from children, including but not limited to:

    a.  Providing clear, understandable, and complete notice of its information practices, including specific disclosures, directly to parents (Section 312.4(b) of the Rule, 16 C.F.R. § 312.4(b));

    b.  Posting a prominent and clearly labeled link to an online notice of its information practices with regard to children, including what information the website operator collects from children online, how it uses such information, its disclosure practices for such information, and other specific disclosures set forth in the Rule (Section 312.4(d) of the Rule, 16 C.F.R. § 312.4(d)); and

    c.  Obtaining verifiable parental consent prior to collecting, using, and/or disclosing personal information from children (Section 312.5(a)(1) of the Rule, 16 C.F.R. § 312.5(a)(1)).

53.    Personal information is "collected or maintained on behalf of an operator when . . . [t]he operator benefits by allowing another person to collect personal information directly from users of" an online service. 16 C.F.R. § 312.2. Personal information includes persistent identifiers that can be used to recognize a user over time and across different websites or online services. *Id*. (definition of "Personal information").

54.    An online service, or portion thereof, is directed to children when considering such factors as the subject matter, visual content, music or other audio content, language, use of animated characters or child-oriented activities, age of models, other characteristics, and evidence

regarding the intended and actual audience of the service. *Id.* (definition of "Web site or online service directed to children"). Defendants are operators under the COPPA Rule because they operate online services in the form of streaming content on YouTube that includes portions that are directed to children.

55.     Disney benefits when personal information is collected directly by others on behalf of Disney.

**F.     Disney Violated Minor Plaintiff's Rights**

56.     At all relevant times, Minor Plaintiff was under the age of thirteen.

57.     During the relevant period, Minor Plaintiff used one or more personal electronic devices to view Disney's YouTube Content.

58.     On information and belief, Minor Plaintiff viewed one or more child-directed videos that Disney uploaded to one of its YouTube channels, but that Disney failed to designate as MFK.

59.     On information and belief, by failing to designate child-directed content viewed by Minor Plaintiff as MFK, Disney allowed YouTube to surreptitiously collect Minor Plaintiff's data and exploit that data for targeted advertising.

60.     Disney never notified Guardian Savich that it had enabled the collection of Minor Plaintiff's personal information for the purposes of targeted advertising.

61.     Guardian Savich never gave consent for Disney to enable the collection of Minor Plaintiff's data for targeted advertising on the YouTube platform.

**VI.    Class Action Allegations**

62.     A.L., Minor Plaintiff, individually, by and through Guardian Savich, and on behalf of all others similarly situated, brings this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the class defined as:

> All natural persons in the United States who, at any time between November 1, 2019, and September 2, 2025, were under 13 years old and viewed child-directed content that was uploaded by Disney on YouTube and not marked as "made for kids" (the "Class").

63.     Excluded from the Class are Defendants, their subsidiaries and affiliates, their officers, directors, and members of their officers' and directors' immediate families, any entity in which Defendants have a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of those judicial officers' immediate families.

64.     Plaintiff reserves the right to modify or amend the definition of the proposed Class prior to moving for class certification.

**A.     Numerosity**

65.     The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective Class Members through this class action will benefit both the parties and this Court. The exact size of the Class and the identities of the individual members thereof are ascertainable through Defendants' records, including, but not limited to, the YouTube analytics data collected by Defendants for YouTube uploads on Disney-affiliated channels. Upon information and belief, the Class, at minimum, comprises millions of children and former children.

**B.     Commonality**

66.     This action involves questions of law and fact that are common to Minor Plaintiff and the Class Members. Such common questions include, but are not limited to:

     a.  Whether Disney allowed YouTube to collect the personal identifying information of Class Members.

     b.  Whether Disney obtained verifiable parental consent before allowing YouTube to collect the personal identifying information of Class Members.

     c.  Whether Disney violated Minor Plaintiff's and Class Members right to privacy.

     d.  Whether Plaintiff and Class Members are entitled to relief, including restitution and injunctive relief; and

     e.  Whether Plaintiff and Class Members are entitled to damages or other monetary relief, and if so, in what amount.

1

**C.    Typicality**

2        67.    Plaintiff's claims are typical of the claims of the Class Members. The claims of

3  Plaintiff and Class Members are based on the same legal theories and arise from the same illegal

4  conduct by Defendants as alleged herein. Defendants' conduct caused Plaintiff and Class Members

5  to suffer the same or similar injuries and/or damages. Plaintiff's claims are, therefore,

6  representative of and typical of the claims of all other Class Members.

7        **D.    Adequacy of Representation**

8        68.    Minor Plaintiff, by and through Guardian Savich, is an adequate representative of

9  the Class because Minor Plaintiff is a member of the class; Minor Plaintiff's claims arise out of

10  the same common course of conduct giving rise to the claims of the other Class Members. Minor

11  Plaintiff, by and through Guardian Savich, is committed to pursuing this lawsuit against Disney to

12  obtain relief for the Class. Neither Guardian Savich nor Minor Plaintiff have any conflicts of

13  interest with Class Members. Guardian Savich intends to vigorously prosecute this case on behalf

14  of Minor Plaintiff and the Class and will fairly and adequately protect the interests of the class.

15  Guardian Savich and Minor Plaintiff have retained counsel competent and experienced in complex

16  class actions, including data privacy litigation.

17        **E.    Superiority**

18        69.    This class action is appropriate for certification because class proceedings are

19  superior to other available methods for the fair and efficient adjudication of this controversy and

20  joinder of all members of the Class is impracticable. This proposed class action presents fewer

21  management difficulties than individual litigation, and provides the benefits of single adjudication,

22  economies of scale, and comprehensive supervision by a single court. Class treatment will create

23  economies of time, effort, and expense and promote uniform decision-making.

24        **F.    Injunctive and Declaratory Relief**

25        70.    Class certification is also appropriate under Rule 23(b)(2) and (c). Defendants,

26  through their uniform conduct, acted or refused to act on grounds generally applicable to the Class

27  as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.

28

Class Action Complaint and Demand for Jury Trial

### G.    Predominance

71.    Common questions of law and fact predominate over any questions affecting only individual Class members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendants' liability and the fact of damages is common to Plaintiff and each member of the Class. If Defendants breached their duties and released Plaintiff's and Class Members' PII, then Plaintiff and each Class Member suffered damages by that conduct.

### H.    Ascertainability

72.    Members of the Class are ascertainable. Class Membership is defined using objective criteria, and Class Members may be readily identified through Defendants' books and records.

## VII.    Causes of Action

### A.    First Cause of Action: Negligence Per Se

73.    Each preceding paragraph is incorporated by reference as if set forth fully herein.

74.    A presumption of negligence (negligence per se) is established where a defendant's negligence involves the violation of a statute or regulation, where plaintiff is within the class of persons that the statute or regulation was designed to protect and the violation is a substantial factor in the plaintiff's harm.

75.    Defendants owed a duty under to take reasonable steps to protect the online privacy and personal information of Minor Plaintiff and Class Members.

76.    Defendants breached this duty by negligently, wantonly, carelessly, or recklessly failing to designate as MFK child-directed content that it uploaded to YouTube, which allowed YouTube to collect and exploit Minor Plaintiff's and the Class Members' private information.

77.    In doing so, Defendants violated several statutes with which they had a duty to comply, including COPPA and those discussed subsequently herein.

78.    Minor Plaintiff and the Class Members are within the class of persons protected by COPPA.

79.    Minor Plaintiff and the Class Members suffered the very harm that COPPA was and is intended to prevent.

80.    As a direct and proximate result of Defendants' COPPA violations, the Minor Plaintiff and members of the Class have suffered legal harm and damages to include the collection, exploitation, and exposure of their personal information and private data.

81.    Defendants are, therefore, liable to Minor Plaintiff and Class Members for all damages arising from their violations of COPPA in an amount to be proven at trial and for disgorgement of profits that Defendants realized by virtue of its unlawful conduct.

**B.    Second Cause of Action: Negligent Undertaking**

82.    Each preceding paragraph is incorporated by reference as if set forth fully herein.

83.    Defendants voluntarily rendered services by uploading videos to the YouTube platform and making those videos available to Minor Plaintiff and the Class.

84.    From the notice it received from YouTube in 2019, Defendants should have recognized that all child-directed videos that it uploaded to YouTube were required to be designated as MFK in order to prevent YouTube from collecting and exploiting the personal information and private data of children, including Minor Plaintiff and the Class.

85.    Defendants failed to exercise reasonable care in rendering its services by failing to designate as MFK certain child-directed content that it uploaded to YouTube.

86.    Defendants' failure to exercise reasonable care was a substantial factor in causing harm to Minor Plaintiff and the Class.

87.    Minor Plaintiff and the Class suffered harm because they relied on Defendants to mark its child-directed content as MFK in order to protect Minor Plaintiff's and the Class Members' personal information and private data.

**C.    Third Cause of Action: Negligent Failure to Warn**

88.    Each preceding paragraph is incorporated by reference as if set forth fully herein.

89.    Defendants distributed child-directed videos via the YouTube platform.

90.    Defendants knew, or reasonably should have known, that content it uploaded to YouTube was child-directed, that children under the age of 13 would view this content, and that

by failing to designate its child-directed content as MFK the personal information and private data of children would be collected and exploited.

91.    Defendants knew or reasonably should have known that Minor Plaintiff, Class Members, and the Class Members' parents and guardians would not realize this danger.

92.    Defendants failed to adequately warn Guardian Savich, the Class Members, and the Class Members' parents and guardians that by allowing children to view the child-directed content that Defendants uploaded to YouTube, their respective personal data and private information would be collected and exploited by YouTube.

93.    A reasonable content creator under the same or similar circumstances would have warned of this danger.

94.    Defendants' failure to warn was a substantial factor in causing harm to Minor Plaintiff and the Class.

95.    Minor Plaintiff and the Class were harmed as a direct and proximate result of Defendants' conduct.

**D.    Fourth Cause of Action: Negligence**

96.    Each preceding paragraph is incorporated by reference as if set forth fully herein.

97.    Defendants owed a duty of care to safeguard the privacy and personal information of children who viewed the child-directed content that it uploaded to YouTube.

98.    Defendants owed a higher duty of care to children than to an ordinary consumer because children lack the capacity to appreciate and avoid risk.

99.    Defendants knew or reasonably should have known that content they uploaded to YouTube was child-directed, that children under the age of 13 would view this content, and that by failing to designate its child-directed content as MFK the personal information and private data of children would be collected and exploited.

100.    Defendants negligently, wantonly, carelessly, or recklessly breached its duty by failing to designate as MFK certain child-directed content that it uploaded to YouTube.

101.    As a direct and proximate result of Defendants' breach, the Minor Plaintiff and the Class have suffered legal harm and damages.

102.    Defendants are, therefore, liable to Minor Plaintiff and the Class for all damages arising from Defendants' breach in an amount to be proven at trial and for disgorgement of profits that Defendants realized by virtue of their unlawful conduct.

**E.    Fifth Cause of Action: Invasion of Privacy**

103.    Each preceding paragraph is incorporated by reference as if set forth fully herein.

104.    Minor Plaintiff and the Class Members have a reasonable expectation of privacy in their personal information as defined by COPPA. This includes data about their respective location and online activity while using an internet connected device.

105.    Minor Plaintiff and the Class Members have a reasonable expectation of privacy in their activities while using a mobile device or computer, and in behavior that may be monitored by the surreptitious tracking that was employed or otherwise enabled by Defendants.

106.    Guardian Savichand the parents or guardians of the Class Members have reasonable expectations of privacy in their children's mobile devices and their online behavior and activities, generally. These are private matters.

107.    Defendants intentionally intruded upon the private affairs of Minor Plaintiff and the Class Members, by (1) electronic means while they were in private and in their personal quarters, (2) improperly accessing their personal information and using it for improper purposes including, but not limited to, targeting Minor Plaintiff and Class Members with advertising in violation of COPPA. This constitutes an egregious breach of social norms.

108.    Defendants' intrusions upon the private affairs, conversations, and matters of Minor Plaintiff and the Class Members were substantial and would be highly offensive to a reasonable person.

109.    As minor children, Plaintiffs and Class Members lacked the ability to form expectations about reasonable privacy or to consent to Defendants' actions; their parents and guardians, however, had a reasonable expectation of privacy in their children's online viewing activities, particularly given their children's ages and the nature of the content involved.

110.    Neither Guardian Savich, nor the parents and guardians of the respective Class Members consented to Defendants' intrusions upon their private affairs, concerns, and seclusions.

111.    Minor Plaintiff and the Class Members suffered actual and concrete injury as a result of Defendants' intrusions upon the private affairs, conversations, and matters of and Plaintiffs and the Class Members.

112.    Guardian Savich seeks on behalf of Minor Plaintiff and Class Members appropriate relief for those injuries, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests, risk of future invasions of privacy, and disgorgement of profits made by Defendants as a result of their intrusions upon the private affairs, concerns, and seclusion of Plaintiffs.

**F.    Sixth Cause of Action: Intrusion Upon Seclusion**

113.    Each preceding paragraph is incorporated by reference as if set forth fully herein.

114.    Guardian Savich and the parents and guardians of the Class Members had a reasonable expectation of privacy in their minor children's respective personal information and private data, which includes data about their:

      a.    Identity;

      b.    Location;

      c.    Online activity; and

      d.    The foregoing while using internet connected devices.

115.    The content on Defendants' YouTube channels was clearly and unmistakably directed to children. Defendants were aware of this, yet failed to designate as MFK their child-directed content, thereby enabling YouTube to collect and exploit for itself, Defendants, and others data from children including Minor Plaintiff and the Class Members.

116.    As a result of the uniform conduct and practices alleged herein, Defendants intentionally intruded upon the seclusion of Minor Plaintiff's and the Class Members' seclusion by improperly collecting and using their personal data without (1) obtaining consent or (2) providing direct notice to Guardian Savich or the Class Members' respective parents and guardians, and obtaining verifiable parental consent as required by COPPA.

117.    As a result of the uniform conduct and practices alleged herein, Defendants' intrusion upon seclusion of Minor Plaintiff and the Class Members was substantial and highly

offensive to a reasonable person. This constitutes an egregious breach of social norms because Defendants used the personal information for an improper purpose, including by targeting Minor Plaintiff and members of the Class with advertising in violation of COPPA.

118.    As minor children, Minor Plaintiff and members of the Class lacked the ability to form expectations about reasonable privacy. Their respective parents and guardians, however, had a reasonable expectation of privacy in their children's online viewing activities, particularly given their children's ages and the nature of the content involved.

119.    Neither Minor Plaintiff, the members of the Class, nor their respective parents or guardians consented to Defendants' intrusions upon their private affairs, concerns, and seclusions.

120.    Neither Minor Plaintiff, the members of the Class, nor their respective parents or guardians consented to the collection and use of their personal information.

121.    Minor Plaintiff and the members of the Class suffered actual and concrete injury as a result of Defendants' intrusion upon seclusion.

122.    Guardian Savich seeks on behalf of Minor Plaintiff and Class Members appropriate relief for those injuries, including but not limited to damages that will reasonably compensate them for the harm to their privacy interests, risk of future invasions of privacy, and disgorgement of profits made by Defendants as a result of their intrusions upon the private affairs, concerns, and seclusion of Plaintiffs.

**G.    Seventh Cause of Action: Violation of California Business & Professions Code Section 17200**

123.    Each preceding paragraph is incorporated by reference as if set forth fully herein.

124.    Defendants' business acts and practices are "unlawful" under the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL"). As alleged above, Defendants violated COPPA and other laws described herein.

125.    Defendants' business acts and practices are "unfair" under the UCL. California has a strong public policy of protecting consumers' privacy interests, including protecting consumers' personal data. Defendants violated this public policy by failing to designate as MFK child-directed videos that it uploaded to its YouTube channels. This allowed YouTube to surreptitiously collect

and exploit the personal information and private data of children including Minor Plaintiff and Class Members for YouTube's benefit, for Defendants' benefit, and for the benefit of others.

126.    Defendants' business acts and practices are also "unfair" in that they are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to a particularly vulnerable category of consumers—children. The gravity of harm of Defendants' allowing YouTube to collect, disclose, and otherwise misuse Minor Plaintiff's and Class Members' personal information and private data is significant and there is no corresponding benefit resulting from such conduct. Because Minor Plaintiff, Guardian Savich, the Class Members, and their respective parents or guardians, were completely unaware of Defendants' conduct, they could not have possibly avoided the harm.

127.    Defendants' business acts and practices are also "fraudulent" within the meaning of the UCL. Disney failed to designate as MFK certain child-directed videos that it uploaded to its YouTube channels. In so doing, this allowed YouTube to collect the personal information and private data of Minor Plaintiff and the Class Members. Because YouTube also advertised on YouTube, this allowed Disney to target its own advertisements to children who viewed Disney's child-directed videos and to generate revenue by allowing YouTube to serve other ads to children who viewed Disney's child-directed videos. By posting its child-directed videos to channels with names suggesting the content would be safe for children, Disney deceived children and their parents into believing that their children's data would be safe and would not be shared or exploited.

128.    Defendants' violations were, and are, willful, deceptive, unfair, and unconscionable.

129.    Had Guardian Savich and the Class Members' parents or guardians known that their children's information would be collected and otherwise misused for Defendants' own benefit, they would not have allowed their children to watch Defendants' videos on their YouTube channels.

130.    Minor Plaintiff and the Class Members have a property interest in their sensitive personal data. By surreptitiously collecting and otherwise misusing Minor Plaintiffs and the Class

Members' information, Defendants have taken property from Minor Plaintiff and Class Members without providing just or any compensation.

131.    Plaintiff and the Class Members have lost money and property as a result of Defendants' conduct in violation of the UCL. The personal information and private data that Defendants allowed YouTube to collect, objectively has value. Companies are willing to pay for data like the data that YouTube was able to collect because Defendants failed to designate as MFK the child-directed videos they uploaded to YouTube.

132.    By deceptively allowing YouTube to collect and exploit data from Defendants child-directed videos, Defendant has been able to generate advertising revenue through advertisements that targeted children who viewed their videos and to have YouTube serve Defendants' own advertisements to children who watch their videos.

133.    For these reasons, Guardian Savich seeks on behalf of Minor Plaintiff and the Class Members restitution and compensatory damages.

**H.    Eighth Cause of Action: Violation of California's False Advertising Law (Cal. Bus. & Prof. Code § 17500 *et seq.*)**

134.    Each preceding paragraph is incorporated by reference as if set forth fully herein.

135.    California's False Advertising Law ("FAL") makes it unlawful for any person (including a firm, corporation, or association) or employee thereof to make or disseminate, or cause to be made or disseminated, any untrue or misleading statement in connection with the sale of any good or service, when it was known or could have been known by the exercise of reasonable care to be untrue or misleading.

136.    During the relevant period, each Defendant violated the FAL by knowingly making misleading statements in connection with the distribution of videos on their YouTube Channels. Specifically, Defendants distributed their videos through numerous YouTube channels that included names which suggested that the content was meant for children such as Disney Jr., Disney Family, Pixar Cars, Mickey Mouse, Nat Geo Kids, Disney Descendants, and DisneyBooks. As such, and in light of COPPA, a parent would reasonably expect that their child's personal information and private data would not be surreptitiously collected and exploited.

137.     Defendants engaged in false advertising practices by misrepresenting the safety of their products, claiming beneficial properties they do not possess, all the while concealing the dangers.

138.     They advertised its videos without the intent to provide them as promoted, failed to adequately disclose the substantial privacy risks to the public, and knowingly targeted children, a vulnerable population, with misleading advertising. These actions (and inactions) created a false net impression about the safety of watching child-directed videos on Defendants' YouTube channels.

139.     As a direct and proximate result of the foregoing acts and practices, each Defendant received income, profits, and other benefits that it would not have received if it had not engaged in violations of the FAL.

I.     **Ninth Cause of Action: Trespass to Chattels**

140.     Each preceding paragraph is incorporated by reference as if set forth fully herein.

141.     Plaintiff and the Class Members have a property interest in their personal information; an asset with value that Plaintiff and the Class Members each possess.

142.     Defendants unlawfully took possession of, and commercially exploited Minor Plaintiff's and the Class Members' personal information and private data without consent and without compensating them for the use of their assets.

143.     By intentionally choosing to not designate clearly child-directed content as MFK on YouTube, Defendants enabled and benefited from the surreptitious placement of tracking tools on children's devices through third-party advertising systems. This conduct was done without notice, authorization, or valid parental consent, and was specifically intended to harvest behavioral data from children for advertising and profit.

144.     As a result of the conduct and practices alleged herein, including the unauthorized digital intrusion, Defendants' conduct caused harm, in that it damaged, diminished, impaired, interfered with, and/or destroyed the value of the personal information in which Plaintiff and Class members have a possessory interest.

145.    Guardian Savich seeks on behalf of Minor Plaintiff and Class Members appropriate relief for those injuries, including but not limited to damages that will reasonably compensate them for use of their personal assets, and disgorgement of profits made by Defendants as a result of their use of their personal assets.

**J.      Tenth Cause of Action: Unjust Enrichment**

146.    Each preceding paragraph is incorporated by reference as if set forth fully herein.

147.    Defendants received a benefit from their collection and use of Plaintiffs' and Class Members' data and personal information, including the ability to deploy targeted advertising to Minor Plaintiff and Class Members, in violation of state and federal law.

148.    Upon information and belief, Defendants' collection and use of Plaintiffs' and Class Members' Personal Information yielded significant monetary benefit to Defendants. Indeed, Defendants directly profited from its arrangement with YouTube through advertising revenue shared with YouTube and through enhanced audience insights used to further their commercial interests.

149.    Defendants enriched themselves through advertising targeted to Plaintiffs and Class Members, among various means. Defendants' enrichment came at the direct expense of Plaintiffs and Class Members, whose privacy was compromised and whose personal data was wrongfully used to generate corporate profit.

150.    Plaintiffs and Class Members were harmed by the benefit to Defendants, because their privacy was violated and their Personal Information collected in contravention of law and social norms in a way that would be unconscionable to a reasonable person.

151.    Defendants should be compelled to disgorge the profits they accumulated as a result of their unjust and unlawful collection and use of Plaintiffs' and Class Members' personal information.

152.    Plaintiffs seek restitution and disgorgement of all profits, benefits, and other compensation obtained by Defendants as a result of their unlawful conduct.

**VIII.   Prayer for Relief**

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, prays for relief as follows:

a.   For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Minor Plaintiff as representative for the Class and Plaintiff's attorneys as Class Counsel to represent the class;

b.   For an order finding in favor of Minor Plaintiff and the Class on all counts asserted herein;

c.   For damages in an amount to be determined by the trier of fact;

d.   For an order of restitution and all other forms of equitable monetary relief;

e.   Declaratory and injunctive relief as described herein;

f.   Awarding Minor Plaintiff's reasonable attorneys' fees, costs, and expenses;

g.   Awarding pre- and post-judgment interest on any amounts awarded; and

h.   Awarding such other and further relief as may be just and proper.

**IX.   Demand for Jury Trial**

A jury trial is demanded on all claims so triable.


Dated:  September 25, 2025

Respectfully submitted,

*/s/ Kas L. Gallucci*

Ronald A. Marron (SBN 175650)
Alexis M. Wood (SBN 270200)
Kas L. Gallucci (SBN 288709)
**Law Offices of Ronald A. Marron**
651 Arroyo Drive
San Diego, CA 92108
Tel.: (619) 696-9006
Fax: (619) 564-6665
Ron@consumersadvocates.com
Alexis@consumersadvocates.com
Kas@consumersadvocates.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

William Darryl Harris, II (*pro hac vice* forthcoming)
Ryan Wagenleitner (SBN 262408)
**Harris Legal Advisors LLC**
3136 Kingsdale Center, Suite 246
Columbus, OH 43221
Tel: (614) 504-3350
Fax: (614) 340-1940
will@harrislegaladvisors.com
ryan@harrislegaladvisors.com

Connor P. Hayes (*pro hac vice* forthcoming)
**LYNCH CARPENTER, LLP**
1133 Penn Ave., 5th Floor
Pittsburgh, PA 15222
Tel.:   (412) 322-9243
Fax:   (724) 656-1556
connorh@lcllp.com

*Counsel for Plaintiffs and the Putative Class*

Class Action Complaint and Demand for Jury Trial